Kopko v Kopko (2024 NY Slip Op 03853)

Kopko v Kopko

2024 NY Slip Op 03853

Decided on July 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 18, 2024

CV-23-0393
[*1]Kimberly A. Kopko, Respondent,
v
Edward E. Kopko, Appellant.

Calendar Date:May 29, 2024

Before:Aarons, J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Edward E. Kopko, Ithaca, appellant pro se.
Miller Mayer, LLP, Ithaca (R. James Miller of counsel), for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (Mark G. Masler, J.), entered February 6, 2023 in Tompkins County, granting, among other things, plaintiff a divorce, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1992 and have one child (born in 1996). In 2019, the wife commenced this divorce action. The husband, a practicing attorney, answered and in June 2022 — one month before trial — moved for ancillary relief, including temporary maintenance and interim expert witness and counsel fees. In that regard, he maintained that he was the less monied spouse and that his health issues prohibited him from generating sufficient income to effectively litigate this matter. Supreme Court deferred resolution of the husband's motion pending trial given a dispute as to which party had the higher income, but allowed each party to withdraw $8,000 from a jointly-held bank account.
In July 2022, the husband moved to recuse the presiding trial judge arguing, among other things, that certain statements made during a recent virtual status conference evinced his inability to remain fair and impartial. The husband declined the opportunity to have a hearing on the recusal issue and, following oral argument, Supreme Court denied the motion. After a trial held in July 2022, the court issued a decision granting the parties a divorce and distributing the marital property. The court denied the husband's request for maintenance, as well as his request for expert witness and counsel fees. An amended decision was subsequently issued detailing the parties' rights in a jointly-owned savings account. The decision and amended decision were incorporated into a judgment of divorce entered February 6, 2023. The husband appeals.[FN1]
We turn first to the husband's contention that Supreme Court abused its discretion in denying his motion for recusal. Where, as here, disqualification is not required under Judiciary Law § 14, "a judge's decision on a recusal motion is one of discretion, and when recusal is sought based upon impropriety as distinguished from legal disqualification, the judge is the sole arbiter" (McAuliffe v McAuliffe, 209 AD3d 1119, 1120 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Patrick UU. v Frances VV., 200 AD3d 1156, 1161 [3d Dept 2021]). "However, that discretion is not unlimited, and judges must still recuse in cases where their impartiality might be reasonably questioned" (Minckler v D'Ella, Inc., 223 AD3d 980, 981 [3d Dept 2024] [internal quotation marks and citations omitted]). For the appearance of impropriety to be disqualifying, the alleged bias and prejudice "must stem from an extrajudicial source and result in an opinion on the merits" based on the outside source (People v Glynn, 21 NY3d 614, 618 [2013] [internal quotation marks and citations omitted]; see Concord Assoc., L.P. v EPT Concord, LLC, 130 AD3d 1404, 1406 [3d Dept 2015], lv denied 26 NY3d 912 [2015[*2]]).
The husband's bias claim was largely premised upon statements made during a June 22, 2022 status conference when the trial judge allegedly questioned the legitimacy of the husband's health problems, emphasizing that he continued to appear as an attorney in other matters without issue. The judge also allegedly stated that the case was "presumed to be a 50/50 distribution of marital assets" subject to review of the husband's health issues, which he warned would need to be established with medical documentation. In the husband's view, these statements indicated that the judge had predetermined the case against him. To the contrary, the record demonstrates that Supreme Court had already accommodated several adjournment requests by the husband on account of his health issues while warning that additional adjournment requests would require a doctor's note. Given that the wife challenged the extent of the husband's health limitations, the court's statements do not evidence bias. Nor were the statements indicative of a predetermined outcome — a conclusion confirmed by the fact that the court ultimately imputed the husband's income at "50% of his historical earnings" due to the medical evidence presented at trial (see generally Matter of Gilio v Adult Career & Continuing Educ. Servs.-Vocational Rehabilitation, 218 AD3d 871, 872-873 [3d Dept 2023]; Matter of Bowe v Bowe, 124 AD3d 645, 646 [2d Dept 2015]). Moreover, the court reasonably deferred the husband's motion for interim relief while granting him access to additional funds for litigation expenses. The judge did not, as the husband suggests, have a conflict of interest by virtue of the husband having filed a complaint against him with the Commission on Judicial Conduct (see Matter of Patrick UU. v Frances VV., 200 AD3d at 1161; Matter of Wilson v Brown, 162 AD3d 1054, 1056 [2d Dept 2018]).[FN2] Stated succinctly, the record reflects that the trial judge engaged in a fair consideration of the issues before him and rendered a determination grounded in the evidence. In these circumstances, we find that the trial judge did not improvidently exercise his discretion in denying the recusal motion (see McAuliffe v McAuliffe, 209 AD3d at 1121; Matter of Patrick UU. v Frances VV., 200 AD3d at 1161; Matter of Adams v Bracci, 100 AD3d 1214, 1215-1216 [3d Dept 2012]).
As a separate — albeit related — claim of bias, the husband points to the fact that the trial judge filed an ethics complaint against him with the Attorney Grievance Committee (hereinafter AGC) shortly after the judgment was issued. By letter dated February 9, 2023, the trial judge advised AGC that he had "become aware of information" that, in his view, called into question the husband's "honesty, trustworthiness, or fitness as a lawyer," and that he had "waited until the divorce action concluded — including the resolution of motions for contempt that were made following trial — before acting on this information." The judge was "concerned by the striking [*3]inconsistency in" the husband's asserted health limitations juxtaposed against his continued practice of law. Concurrent with the filing of this complaint, the judge recused from presiding over any action in which the husband was involved, as required (see Advisory Comm on Jud Ethics Op 19-35 [2019]). The complaint was ultimately dismissed when the judge did not respond to an invitation from AGC to provide more information.
Highlighting the timing of the ethics complaint filed against him — i.e., just three days after the divorce judgment was issued, even though the information forming the basis of the complaint came to light prior to and during the trial — the husband argues that the court "concealed [its] concerns" and deprived him of due process. When a judge receives information during an ongoing proceeding "indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules of Professional Conduct," the judge is required to "take appropriate action" (22 NYCRR 100.3 [D] [2]; see Advisory Comm on Jud Ethics Ops 19-35 [2019]; 17-07 [2017]). In deciding whether and when to do so, a judge may wait to file an ethics complaint until after the proceeding has terminated (see Advisory Comm on Jud Ethics Ops 20-213 [2021]; 19-107 [2019]; 18-29 [2018]; 15-231 [2016]). As we will discuss in greater detail, the divorce judgment reflects a balanced decision on the merits and, on the record before us, we cannot conclude that the filing and timing of the complaint was indicative of bias or that the husband's due process rights were violated.
"It is well settled that Supreme Court's equitable distribution award will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors under Domestic Relations Law § 236 (B) (5) (d)" (Smith v Smith, 152 AD3d 847, 848 [3d Dept 2017] [internal quotation marks, brackets and citations omitted]; see McGovern v McGovern, 218 AD3d 1067, 1070 [3d Dept 2023]). Those factors include "the income and property of each party[,] . . . the duration of the marriage and the age and health of both parties," the contributions of one party to the other's career and education, "the probable future financial circumstances of each party," the parties' business interests, "the wasteful dissipation of assets by either spouse" and "any other factor which the court shall expressly find to be just and proper" (Domestic Relations Law § 236 [B] [5] [d]). The statutory factors need not be "specifically cited when the factual findings of the court otherwise adequately articulate that the relevant statutory factors were considered" (Ramadan v Ramadan, 195 AD3d 1174, 1175 [3d Dept 2021] [internal quotation marks and citation omitted]).
The husband argues that Supreme Court improperly applied the pertinent statutory factors in distributing the marital property and inadequately considered the impact of his health on his earning capacity. At the time of trial, the wife was 58 and [*4]the husband was 73. During the trial, the husband revealed that, due to serious health issues, he experiences "profound fatigue." While he continued to appear as counsel of record in other matters, he largely did so virtually. He envisioned practicing law until at least the fall of 2023. By comparison, the husband's doctor testified that he should be putting all of his limited energy into improving his health as opposed to maintaining his profession.
In rendering its decision, Supreme Court awarded an $85,000 separate property credit to the husband for a down payment he had made on the parties' prior marital residence in Rhode Island. The court reasonably rejected the husband's undocumented assertion that the appreciation in the value of the Rhode Island property — which the parties sold upon relocating to New York — constituted separate property. The court also properly deemed the husband solely responsible for the tax liability arising from a significant contingent fee he earned in 2019, which he admittedly opted not to pay due to concerns over COVID-19.[FN3] The court then divided the remaining assets "in a substantially equal fashion," while awarding the marital home to the husband at his request. As for maintenance, the court recognized that the husband's health would "likely preclude him from practicing law on a full-time basis," and imputed his income earning potential from the practice of law at 50% of his historical earnings, amounting to $57,772 on a yearly basis. Despite this diminished earning capacity and the fact that the husband would no longer obtain medical insurance through the wife's employment following a divorce, the court determined he would still have "sufficient income to be self-supporting" given that he receives $42,256.80 per year in Social Security benefits, as well as $8,266.34 in required minimum distributions from a SEP IRA. By comparison, the wife's annual income was $89,501.77. Moreover, each party was able to retain their respective retirement savings. In view of the foregoing, the court denied the husband's maintenance request.
In our view, given the long duration of this marriage, the distributive award was fair and reasonable, as was Supreme Court's determination that the husband was not entitled to maintenance. The court adequately considered the impact of the husband's health issues on his earning capacity, took into account how this would affect his ability to remain self-sufficient and considered the relevant statutory factors (see King v King, 202 AD3d 1383, 1388-1389 [3d Dept 2022]; Ramadan v Ramadan, 195 AD3d at 1175; compare Snow v Snow, 14 AD3d 764, 765-766 [3d Dept 2005]). We are unpersuaded by the husband's contention that the court improperly overlooked his contributions to the wife's education and a purported $55,000 payment he made toward her student loan debt incurred during the marriage. At trial, the husband failed to document the amount paid and the wife disputed the amount he actually contributed[*5]. Moreover, the court duly recognized that defendant benefitted significantly from the wife's career enhancement throughout the marriage (see Domestic Relations Law § 236 [B] [5] [d] [7]).
The husband also maintains that Supreme Court abused its discretion in finding the wife liable for only 37.4% of the outstanding student loan debt incurred on behalf of their child solely in the husband's name. To the contrary, the court's decision is grounded in the trial evidence, which demonstrated that the wife paid a significant share of the outstanding debt with income she received after the commencement of the divorce action — i.e., with separate property (see DeLuca v Deluca, 97 NY2d 139, 143-144 [2001]; Domestic Relations Law § 236 [B] [1] [c], [d]). At the same time, the court rejected the wife's argument that the husband should be solely liable for the remaining balance — a balanced decision demonstrating a fair consideration of the issue.
We are similarly unpersuaded by the husband's argument that Supreme Court abused its discretion in denying his request for counsel fees, both on an interim basis and after trial. Domestic Relations Law § 237 (a) provides, in relevant part, that "the court may direct either spouse . . . to pay counsel fees . . . directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse." A court exercising its discretion on this issue "should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relevant merit of the parties' positions as well as the complexity of the case and the extent of legal services rendered" (Yezzi v Small, 206 AD3d 1472, 1477 [3d Dept 2022] [internal quotation marks and citations omitted]; see Button v Button, 165 AD3d 1528, 1534 [3d Dept 2018]). Absent an abuse of discretion, a court's determination regarding a request for counsel fees will not be disturbed (see Hughes v Hughes, 200 AD3d 1404, 1411 [3d Dept 2021]; St. Denny v St. Denny, 185 AD3d 1246, 1248 [3d Dept 2020]).
As explained above, Supreme Court properly deferred the husband's motion for interim counsel fees. As for the court's ultimate determination denying each party's request for counsel fees, we perceive no error. The court denied the wife's request for counsel fees notwithstanding her claim that the husband threatened to prolong resolution of the action, finding that certain of his contentions had merit. In denying the husband's request, the court noted that the parties had "relatively equal incomes" and that, by virtue of its equitable distribution award, "neither party c[ould] be considered the less monied spouse." On this record, it is clear that the court considered the parties' relative [*6]financial circumstances in declining to award counsel fees and there was no abuse of discretion.
Finally, we agree with the husband that the funds he spent on a campaign for District Attorney in 2020 did not constitute a wasteful dissipation of marital assets, as Supreme Court erroneously found (see generally Strang v Strang, 222 AD2d 975, 978 [3d Dept 1995]). While the husband conceded that marital funds were used for the campaign, the wife did not seek a credit for the money spent and no such credit was given — rendering this issue of no moment. We have considered the husband's remaining contentions, including his arguments that Supreme Court erred in finding that he had dissipated additional marital assets, and find them to be unavailing.
Aarons, J.P., Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: We deny the wife's request to dismiss this appeal due to the husband's alleged failure to comply with the parameters of CPLR 5526 in compiling the appellate record. The wife filed a supplemental record containing the relevant documents and we are able to make an informed decision on the merits (see Breen v Breen, 222 AD3d 1202, 1203 [3d Dept 2023]; compare Matter of County of Broome [Cadore], 212 AD3d 1012, 1014 [3d Dept 2023], appeals dismissed 39 NY3d 1116 [2023], 40 NY3d 954 [2023]).

Footnote 2: This complaint was dismissed as without merit on August 31, 2022.

Footnote 3: The record shows that the parties filed their respective 2019 income tax returns as "married filing separately." As of January 2021, the federal tax deficiency amounted to $146,506.62.